AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Alabama

| United States of America | ) | |
|---|---|---|
| v. | ) | |
|  | ) | Case No. |
|  | ) | 5:22-mj-1002-HNJ |
|  | ) | |
| Matthias Jacob Edward Mann | ) | |
|  | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __12/31/21 until on or about 1/5/22__ in the county of __Morgan__ in the __Northern__ District of __Alabama__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: Title 18, United States Code, Section 2422(a) | Attempted Coercion and Enticement |
| Count 2: Title 18, United States Code, Section 1201(a)(1) and (d) | Attempted Kidnapping |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

*Christopher J. Hendon*

Complainant's signature

Christopher J. Hendon, Special Agent, FBI

Printed name and title

Sworn to before me and signed in my presence.

Date: 01/05/2022

Herman N. Johnson Jr.
Digitally signed by Herman N. Johnson Jr.
Date: 2022.01.05 23:18:14 -06'00'

Judge's signature

City and state: Huntsville, Alabama        Herman N. Johnson, Jr., U.S. Magistrate Judge

Printed name and title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR COMPLAINT AND SEARCH WARRANT

I, Christopher J. Hendon, a Special Agent (SA) with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) since August 1, 1999, and am currently assigned to the Huntsville Resident Agency office of the FBI. While employed by FBI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, child pornography, human trafficking and sex trafficking, as well as violent crime violations including kidnapping, home invasion, racketeering, Hobbs Act, and other federal criminal violations. I have gained this experience through training as well as through everyday work/investigation relating to conducting these types of investigations through my twenty-two year career. I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2422(a) and 1201. I am authorized by the Attorney General to request a search warrant.

2. This affidavit is submitted in support of the following:

   a. An application for a search warrant for the residential address ▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (a single home dwelling) (SUBJECT RESIDENCE), which is more specifically described in Attachment A, for evidence of a crime, property designed for use, intended for use, or used in committing a crime,

contraband, and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2422(a) (attempted coercion and enticement) as well as 18 U.S.C. §§ 1201 (a)(1)(2) and (d) (attempted kidnapping); and

        b.    A criminal complaint against Matthias Jacob Edward Mann (SUBJECT) for violations of 18 U.S.C. § 2422(a) (attempted coercion and enticement) as well as 18 U.S.C. §§ 1201 (a)(1) and (d) (attempted kidnapping).

3.    The statements in this affidavit are based in part on information provided by partner law enforcement agencies, namely the Owatonna Minnesota Police Department, the Sun Prairie Wisconsin Police Department, the Hartselle Alabama Police Department, as well as the Federal Bureau of Investigation – Atlanta, Georgia Division. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and complaint and does not set forth all my knowledge about this matter.

## STATUTORY AUTHORITY

4.    As noted above, this investigation concerns alleged violations of the following statutes:

        a.    Title 18, United States Code, Section 2422(a) prohibits any person from knowingly persuading, inducing, enticing, or coercing any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempting to do so.

b.  Title 18, United States Code, Sections 1201(a)(1) and (d) make it a crime to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold for ransom or reward any person if the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce to commit or in furtherance of the commission of the offense.

## BACKGROUND OF INVESTIGATION

5. On 01/04/2022, Affiant was contacted by Detective Berg of the Owatonna (Minnesota) Police Department. Detective Berg is active on the social media messaging platform "Kik" in an undercover capacity as part of his law enforcement responsibilities.[1]

6. On the afternoon of 12/29/2021, Detective Berg was monitoring the public Kik group "Abduction and R@pe 3." This is a group in which users describe various sexual fantasies, request the sexual assaults of others (with either a knowing or unknowing victim), and trade rape/sexual assault videos.

7. Detective Berg saw that a new user with the screen name "Dylan H," whose Kik account is ▆▆▆▆▆▆▆ posted a message in the Abduction and R@pe 3 group at approximately 1329 hours (CST), which read, "Can anyone abduct and rape a

---

[1] According to Kik's Law Enforcement Guide, "Kik Messenger is a smartphone application available for download from the Apple iTunes Store, Google Play Store, Windows Phone app store, and the Ovi Store (for Symbian users). BlackBerry users (on OS versions 4.6 to 7) can download Kik from the Kik web site. Kik Messenger provides cross-platform smartphone instant messaging, which allows our users to have text-based conversations with one another. Kik users can also use Kik Messenger to share rich media like photos, YouTube videos, and other forms of content."

bitch in Wisconsin?". Detective Berg messaged Dylan H. and stated that he was interested in assisting with the request. Dylan H. provided the name of the victim (VICTIM) as the person from Wisconsin that Dylan H. wished to be abducted and raped.

8. Dylan H. also sent Detective Berg various photographs of VICTIM and a physical address for VICTIM in Sun Prairie, Wisconsin. Dylan H. described VICTIM as an ex-friend and requested that VICTIM "needs the most brutal anal rape imaginable."

9. Dylan H. told Detective Berg that he had previously been in conversation with a different individual about conducting a similar act on his and this individual had tried "ratting" him out. Dylan H. continued the conversation with Detective Berg, providing him with several more photographs of VICTIM and a corrected address for VICTIM in Sun Prairie, Wisconsin.

10. During their chats, Detective Berg told Dylan H. that he lived in Minnesota. Dylan H. asked Detective Berg how long a drive it would be from where he lived in Minnesota to Wisconsin where the VICTIM resided.

11. Detective Berg contacted the Sun Prairie Police Department in Wisconsin to gain their assistance in locating VICTIM to ensure VICTIM's safety. Initial investigative work completed by the Sun Prairie Police Department verified that VICTIM is a real person and the address provided by Dylan H. was an actual prior

residence utilized by VICTIM. Law enforcement ascertained VICTIM's current address, contacted VICTIM, and devised a plan to ensure VICTIM's safety.

12. Detective Berg conducted a recorded telephone conversation with Dylan H. on 12/30/2021. Dylan H. provided Detective Berg with a (Pinger/Bandwidth) phone number of ▮▮▮▮▮▮▮▮ at which to call him. On the call, Dylan H. confirmed that his request to abduct and rape VICTIM was not a fantasy. Dylan H. stated that he knew VICTIM as a former friend/acquaintance. Dylan H. also said that he wanted a video of the abduction and sexual assault of VICTIM to confirm that the abduction and rape was carried out as requested.

13. Detective Berg maintained contact with Dylan H. after the call on Kik and through text messages to ▮▮▮▮▮▮▮▮ over the following weekend. During their subsequent conversations, Dylan H. agreed to pay Detective Berg approximately $100 for gas money to travel to Wisconsin from Minnesota and approximately $2,000.00 once the abduction and rape of VICTIM had been completed.

14. Detective Berg sent an exigent administrative subpoena to Kik to identify the user "Dylan H." Kik responded with the following information: an individual had recently created this Kik account on 12/28/2021 at approximately 0900 hours UTC with the verified email address of ▮▮▮▮▮▮▮▮▮▮▮▮. Additionally, the internet protocol (IP) addresses used by this same individual resolved to both Hartselle, Alabama and the Georgia area.

15. Detective Berg reviewed the IP address logs provided by Kik for Dylan H., and identified that Dylan H. had used a Charter/Spectrum IP address on or around 12/31/2021, when Dylan H. was still in active contact with Detective Berg. Detective Berg subsequently sent an exigent administrative subpoena to Charter/Spectrum for account information in relation to this IP address. Charter's response indicated that the IP address used by Dylan H. on 12/31/2021 was subscribed to SUBJECT RESIDENCE.

16. Detective Berg also provided an exigent administrative subpoena to Google requesting information on the email address ▓▓▓▓▓▓▓▓▓▓. Google's response indicated that a specific IP address was used on 04/15/2021 at approximately 0620 hours UTC to create the ▓▓▓▓▓▓▓▓▓▓. Detective Berg subsequently researched this IP address and confirmed that it was associated with Verizon Wireless.

17. On 12/31/2021, an exigent request was sent to Verizon Wireless for the specific IP address used on 04/15/2021 to create the ▓▓▓▓▓▓▓▓▓▓ account. Verizon Wireless responded that this account was subscribed to by an "Adam Mann" or "Matthias Mann" of either Smyrna or Alpharetta, Georgia (both locations were listed).

18. That evening, Detective Berg asked the VICTIM if she had any acquaintances that lived in the Georgia area. The VICTIM recalled a name of "Matthias Mann," and told Detective Berg that this was an individual whom VICTIM had met

6

online and had conversations with on Twitter in the past but had not actually met in person.

19. VICTIM also provided Detective Berg with a cellular telephone screenshot of the person she knew as "Matthias Mann" that included a photograph of a male individual later identified by law enforcement as Matthias Edward Mann (SUBJECT), date of birth ▇▇▇▇, registered Alabama driver's license address of SUBJECT RESIDENCE, and a telephone number of ▇▇▇▇. A review of public records as well as subscriber information from SUBJECT's Facebook account reveal that this telephone number is utilized by SUBJECT.

20. Over the weekend of January 1-2, 2022, VICTIM contacted Detective Berg and stated that VICTIM had received crude text messages from the Pinger/Bandwidth number associated with Dylan H. as well as a random $10.00 donation from "Matthias Mann" to an old GoFundMe account VICTIM had set up approximately one year ago.

21. Detective Berg was contacted on the afternoon of 01/03/2022 by Dylan H. through Kik. Dylan H. stated that he had a plan where Detective Berg would send a video of his sexual assault of VICTIM in the mail to SUBJECT RESIDENCE, with the copy of the video recording concealed inside a DVD case. Dylan H. informed Detective Berg that he would be present at SUBJECT RESIDENCE to visit family within the next two weeks and that no one would open the package besides Dylan H.

7

22.     On 01/05/2022, SUBJECT sent $75.00 via Zelle for miscellaneous expenses to whom SUBJECT believed he hired to carry out the crime. The Zelle payment was sent from an account named ▬▬▬▬▬▬▬▬▬▬

23.     Physical surveillance by law enforcement on 01/04/2022 and 01/05/2022 showed a vehicle parked in the driveway of SUBJECT RESIDENCE. According to Alabama law enforcement records, the vehicle is registered to SUBJECT.

## CONCLUSION

24.     Based on the above facts, affiant believes that there is probable cause to establish that SUBJECT RESIDENCE contains evidence of a crime, property designed for use, intended for use, or used in committing a crime, contraband, and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2422(a) (attempted coercion and enticement) as well as 18 U.S.C. §§ 1201 (a)(1)(2) and (d) (attempted kidnapping).

25.     The affiant also believes that there is probable cause to establish that Matthias Edward Mann has violated 18 U.S.C. § 2422(a) (attempted coercion and enticement) as well as 18 U.S.C. §§ 1201 (a)(1)(2) and (d) (attempted kidnapping).

*Christopher J. Hendon*
_____
Christopher J. Hendon
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and subscribed electronically before me this 5th day of January 2022.

Herman N. Johnson Jr.
Digitally signed by Herman N. Johnson Jr.
Date: 2022.01.05 23:18:49 -06'00'

Herman N. Johnson, Jr.
United States Magistrate Judge
Northern District of Alabama

9

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "subject premises") to include a detached structure in the back yard. Four pictures of the subject premises are attached below.

The premises to be searched includes any computers, mobile phones/tablets and/or computer-related media found on the premises.



2





3

## ATTACHMENT B

## ITEMS TO BE SEIZED AND SUBSEQUENTLY SEARCHED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18 U.S.C. Sections 1201(a)(1) and (d) and 2422(a):

1. Computers or storage media used as means to commit the violations described above, including all types of electronic, magnetic, optical, electro-chemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, such as desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

2. For any computer, electronic mobile device, or storage medium whose seizure is otherwise authorized by this warrant and any computer or storage medium that contains or in which is stored records of information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved username and passwords, documents, browsing history, user profiles, email, email contacts, "chat" instant messaging logs, photographs, and correspondence;

b. Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. Evidence of the lack of such malicious software;

d. Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crimes under investigation and to the computer user;

e. Evidence indicating the computer user's state of mind as it relates to the crimes under investigation;

f. Evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. Evidence of the times the COMPUTER was used;

i. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. Documentation and manuals that may be necessary to access the COMPUTER or to conduct forensic examination of the COMPUTER;

k. Records of or information about Internet Protocol addresses used by the COMPUTER;

    l. Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages search terms that the user entered into any Internet search engine, and records of the user-typed web addresses; and

    m. Contextual information necessary to understand the evidence described in this attachment.

3. Routers, modems, and network equipment used to connect computers to the Internet.

4. Records, information, and items relating to violations of the statutes described above including:

    a. Records, information, and items relating to the occupancy or ownership of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ncluding utility and telephone bills, mail envelopes, or addressed correspondence;

    b. Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

    c. Records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored (or deleted), including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.